Submitted on the record January 24, ballot title referred to Attorney General for modification February 9, ballot title certified February 28, 2006 (340 Or 202)

## David J. HUNNICUTT,
*Petitioner,*

*v.*

## Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S52977)

127 P3d 1182

See also 340 Or 98, 127 P3d 1189.

Ross A. Day, Tigard, filed the petition and the reply memorandum for petitioner.

Denise G. Fjordbeck, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

Gillette, J., dissented and filed an opinion in which Riggs and Balmer, JJ., joined.

## KISTLER, J.

Petitioner challenges the Attorney General's certified ballot title for Initiative Petition 80 (2006). Because the ballot title does not substantially comply with the standards set out in ORS 250.035(2), we refer the ballot title to the Attorney General for modification.

Initiative Petition 80, if enacted, would affect a public body's authority to regulate the use of real property.[1] The proposed measure has two main parts. First, the proposed measure would prevent a public body from waiving existing land use laws[2] and relieve it of its obligation under those laws to pay just compensation in two situations: (1) when allowing the proposed use "would reduce the value of a neighboring home or harm a neighboring family farm" and (2) when a corporation or developer seeks to "divide, build on or use land in violation of land use laws." Second, the proposed measure provides that a property owner may build a single family home on the property owner's homestead tract if the property owner could have done so when he or she acquired that tract.

The Attorney General certified the following ballot title:

"LIMITS GOVERNMENT AUTHORITY TO WAIVE LAND USE REGULATIONS; ALLOWS DWELLING IF ALLOWED WHEN PROPERTY ACQUIRED

"RESULT OF 'YES' VOTE:   'Yes' vote prohibits government from waiving land use regulation if proposed use would reduce value of neighboring home, family farm; allows certain single family dwellings.

"RESULT OF 'NO' VOTE:   'No' vote retains current law allowing government to waive land use regulation enacted after current owner acquired property, in lieu of compensation for diminished value.

---

[1] A copy of the proposed measure is attached as an Appendix.

[2] The proposed measure would modify in some respects ORS 197.352, popularly known as Measure 37 (2004). In referring to ORS 197.352, we express no opinion on whether that statute complies with either the state or the federal constitution.

"SUMMARY: Under current law, if land use regulation is enacted after property is acquired and regulation restricts use, reduces fair market value of property, government must pay just compensation or may instead, at government's option, waive regulation. This measure prohibits government from waiving land use regulation if waiver reduces value of neighboring home or harms neighboring family farm; government would not be required to pay compensation in such cases. Prohibits corporation (defined) or developer (defined) from obtaining compensation or waiver. Allows property owner to construct single family dwelling if would have been allowed when property acquired. May be enforced by affected homeowner or family farm; burden of demonstrating compliance with law is on government, corporation, developer. Prevailing homeowner, farmer entitled to costs, attorney fees. Other provisions."

Petitioner has filed a petition to review the certified ballot title. He has challenged the caption, the "yes" vote result statement, the "no" vote result statement, and the summary. Before turning to those challenges, we first discuss a procedural issue. ORAP 11.30 sets out the rules governing petitions for review of ballot titles. ORAP 11.30(4) provides that "[t]he body of the petition shall be no longer than 10 pages * * *." Because the petition in this case was 16 pages long, this court asked petitioner to show cause why it should not strike his petition and, in view of the strict statutory time limits for challenging a ballot title, dismiss his ballot title challenge. In response, petitioner filed, among other things, a late motion for leave to file an overlong petition, and we issued an order allowing that motion. *See* ORAP 1.20(5) (authorizing court to waive any rule for good cause shown). Although we have allowed petitioner's belated motion, we note that, in the future, a petitioner who files an overlong petition in a ballot title case without first obtaining leave to do so runs a substantial risk that the court will strike the petition and dismiss the ballot title challenge without further notice.

■        We now turn to petitioner's ballot title challenges and begin with his challenge to the caption. A ballot title caption must contain "not more than 15 words that reasonably identif[y] the subject matter of the state measure." ORS

250.035(2)(a). Petitioner raises eight objections to the caption. Only one of his objections is well taken. Petitioner notes that the caption says that the proposed measure would "limi[t] government authority to waive land use regulations" but does not say that the proposed measure also would relieve government of its obligation to pay just compensation. Petitioner argues that the "focus on the 'waiver' aspects of the petition is shortsighted, and incorrectly leads the voter to believe the petition only applies to 'waiver' authority, and not to compensation authority."

Before explaining why we agree with that argument, we first describe briefly the statutes that the proposed measure would affect. Currently, if a land use law "restricts the use of private real property or any interest therein and has the effect of reducing the fair market value of the property," a public body either must pay the property owner "just compensation" or waive enforcement of the land use law. ORS 197.352(1) and (4). That requirement is subject to several exceptions; for example, it only applies if the property owner or a family member acquired the property before the public body enacted the applicable land use law. *See* ORS 197.352(3)(E) (identifying that exception).[3]

As noted, the proposed ballot measure would eliminate a public body's statutory obligation to pay just compensation or waive the land use laws in two situations. As petitioner observes, however, the certified caption tells only half the story. It says the proposed measure "limits government authority to waive land use regulations" but does not say that the proposed measure also would relieve government of its statutory obligation to pay just compensation.

As written, the caption implies that the measure would eliminate a public body's ability to waive the land use laws in certain situations but leave the public body obligated to pay just compensation. Because the caption is underinclusive and thus inaccurate, we refer it to the Attorney General

---

[3] ORS 197.352 is more complex than our description of it suggests. It is sufficient, however, for the purposes of this opinion to describe the statute in general terms.

for modification. *See, e.g., Terhune v. Myers,* 338 Or 554, 558-59, 112 P3d 1188 (2005) (phrase "ballot measure" in summary was underinclusive and thus inaccurate because it failed to disclose that proposed measure would apply to both initiative petitions and ballot measures); *Kain v. Myers,* 333 Or 497, 502-03, 41 P3d 1076 (2002) (phrase "prohibits post-election challenges" in caption was inaccurate because it failed to disclose that proposed measure would apply only to some post-election challenges).[4]

■     Petitioner also challenges the "yes" and "no" vote result statements. ORS 250.035(2)(b) and (c) require simple and understandable statements of not more than 25 words that describe the result if the people either approve or reject a measure. Petitioner contends that both the "yes" and "no" vote result statements "suffer from many of the same flaws as the caption." He then lists the specific ways in which, he contends, those statements are flawed. In listing the perceived flaws in the "yes" and "no" vote result statements, petitioner repeats the objections to the caption that we already have held are not persuasive.[5]

■     Petitioner also raises an additional objection to the "yes" vote result statement. That statement provides:

"RESULT OF 'YES' VOTE:   'Yes' vote prohibits government from waiving land use regulation if proposed use would reduce value of neighboring home, family farm; allows certain single family dwellings."

Petitioner observes that the "yes" vote result statement refers to the changes that section 2 of the proposed measure would effect but says nothing about what section 3 would do. He argues that that omission leaves the "yes" vote result statement underinclusive and inaccurate.

---

[4] As noted, petitioner raises seven other objections to the caption. We have considered each of those objections and reject them without further discussion.

[5] Petitioner does not challenge the "yes" vote result statement on the ground that it refers to limiting a public body's ability to waive the land use laws but says nothing about relieving a public body of its obligation to pay just compensation. The Attorney General, however, has the authority to modify the ballot title on referral to ensure that it accurately describes the proposed measure. *See Kain v. Myers,* 336 Or 116, 123 n 3, 79 P3d 864 (2003) (recognizing that authority).

As noted, section 2 provides that public bodies do not have to pay just compensation or waive the land use laws when allowing the proposed use would reduce the value of a neighboring home or harm a neighboring family farm. Section 3 provides that public bodies also do not have to pay just compensation or waive the land use laws when a corporation or builder seeks to "divide, build on or use land in violation of the land use laws[.]" Petitioner reasons that, by describing only the changes effected by section 2 of the proposed measure, "[t]he 'yes' result statement implies that the government may still 'waive' land use regulations if the proposed use will not reduce the value of neighboring properties." That implication is not accurate because, as petitioner notes, section 3 of the proposed measure eliminates a public body's obligation to pay just compensation or waive the land use laws in another equally significant situation—when a corporation or developer seeks to use land in violation of the land use laws. Because the "yes" vote result statement is underinclusive and thus inaccurate, we refer it to the Attorney General for modification.

Finally, petitioner challenges the Attorney General's summary of the measure. ORS 250.035(2)(d) requires "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." Petitioner reiterates in large part the challenges to the caption that we already have held are not persuasive. We have considered all the objections that petitioner raises to the summary and conclude that the summary substantially complies with the Attorney General's obligation to summarize and describe the major effect of the measure.

Ballot title referred to Attorney General for modification.

**GILLETTE, J.**, dissenting.

For the reasons that follow, I respectfully dissent from the majority's choice to waive our rule and address the merits of this petition to review a ballot title certified by the Attorney General.

The problem that I have with this case is mentioned, if not fully explained, by this paragraph in the majority opinion:

> "Petitioner has filed a petition to review the certified ballot title. * * * ORAP 11.30 sets out the rules governing petitions for review of ballot titles. ORAP 11.30(4) provides that '[t]he body of the petition shall be no longer than 10 pages * * *.' Because the petition in this case was 16 pages long, this court asked petitioner to show cause why it should not strike his petition and, in view of the strict statutory time limits for challenging a ballot title, dismiss his ballot title challenge. In response, petitioner filed, among other things, a late motion for leave to file an overlong petition, and we issued an order allowing that motion. *See* ORAP 1.20(5) (authorizing court to waive any rule for good cause shown). Although we have allowed petitioner's belated motion, we note that, in the future, a petitioner who files an overlong petition in a ballot title case without first obtaining leave to do so runs a substantial risk that the court will strike the petition and dismiss the ballot title challenge without further notice."

340 Or at 86.

I enlarge the foregoing recital somewhat, in order to place the reader more thoroughly in the picture respecting the procedural issue involved. On November 28, 2005, petitioner filed a timely petition for review of a ballot title certified by the Attorney General for a proposed initiative measure labeled by the Secretary of State as Initiative Petition 80 (2006).[1] The petition contained a body of 16 pages of substantive discussion and argument, thereby violating the restriction on such petitions set out in ORAP 11.30(4), which provides, in part: "The body of the petition shall be no longer than 10 pages." Petitioner did not include with his petition any documentation acknowledging the rule violation, much less any explanation of his reasons for the violation and, if appropriate, a motion for waiver of the rule in some form.

---

[1] He also filed at that time a petition challenging the Attorney General's certified ballot title for a companion measure, Initiative Petition 81. That petition suffered from the same flaw as the present one, and I take the same view respecting it that I offer in this dissenting opinion.

Upon receiving the petition, the Attorney General responded with a seven-page answering memorandum. For some reason, the Attorney General either did not notice, or decided not to call to our attention, the problem with the length of the petition.

Thereafter, this court met to discuss the merits of the petition. At that time, we determined that petitioner's brief exceeded the permissible length. We therefore immediately notified petitioner of the problem, indicated that it lay within our authority to strike his petition and dismiss the proceeding to review the Attorney General's ballot title, and asked him to show cause why we should not do that. Petitioner's timely response to our request put us in the posture in which we find ourselves today.

Petitioner's response includes this summary:

"[Petitioner] moves the Court for permission to enlarge the page limitation allowed for a Petition for Review of a ballot title. In the alternative, [petitioner] moves the Court for an order waiving the page limit found in ORAP 11.30(4)."

In substance, the alternative forms of relief that petitioner requests amount to the same thing—waiver of our rule. (Either that, or "enlarg[ing] the page limitation" was intended to ask this court to reconfigure its entire set of rules governing petitions of this kind—something that we could not do in the course of this particular proceeding.) I proceed on the assumption that petitioner seeks a waiver. But, what facts or circumstances does he offer in support of his request?

Petitioner first asserts that the page limit rule should be waived, because

"The Petitions[2] make substantial changes to Oregon law. Changes of which the Court may not understand [*sic*] the breadth and depth of their impact. Both Petitions

---

[2] Petitioner refers throughout his arguments to the "petitions," plural, because he submitted a combined response to this court's orders to show cause respecting Initiative Petitions 80 and 81 (2006). Rather than go through the additional editing required to conform his arguments to the issues respecting this case alone, I simply have quoted them verbatim.

address the ultra-complex issues concerning the intersection of land use law and property rights."

Aside from its expressed doubt respecting the intellectual limitations of this court—an issue concerning which I could only be expected to take a self-serving position—the foregoing argument is without merit. The proposed measure involved in this case is not simple, but this court has faced far more complex ones through the years without a party finding it necessary even to suggest that, within the narrow confines of the issues framed by ORS 250.035(2), ten pages were not enough in which to make the necessary arguments.

Petitioner next argues that his petitions were overlong in part because "it is nearly impossible to describe the underlying land use law and the effect the Petitions will have on the law—*in addition to suggesting an alternative, more accurate ballot title*—in the short space provided by the ORAP." (Emphasis in original; footnote omitted.) But this court's rules have not required a party to propose a specific alternative ballot title or part of a ballot title for some time. (The requirement was removed from the rule in 2002.) That argument, too, is without merit.

Petitioner next asserts that the Attorney General's certified ballot titles for Initiative Petitions 80 and 81 "were so inaccurate it would have been difficult—if not impossible—to meet the Court's page limitation." Petitioner argues:

"ORS 250.085 entitles [petitioner] to raise all the challenges he raised in his comments on the draft ballot titles. There is simply no way—given the totality of the inaccuracies of the ballot titles—that [petitioner] could reasonably be expected to conform his Petitions for Review to the requirements of ORAP 11.30(4). Given the conflict in the instant case between Oregon law and the rules of this Court, the Court's rules must succumb to the weight of Oregon statute. [Petitioner] must be given the opportunity to raise all the objections necessary to the ballot titles, notwithstanding the rules of this Court."

In making that argument, petitioner does not quote the pertinent wording of ORS 250.085. If he had done so, he might have seen how incorrect his argument is. ORS 250.085(6) states that, in ballot title review proceedings:

"the Supreme Court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period[.]"

Obviously, the wording in question is a *limitation* on what a party may argue to this court, not a license to petitioners to argue as much and as long as they wish. Petitioner's contrary reading of the statute is not defensible, and the argument that he derives from that reading is without merit.

Finally, petitioner argues simply that the petitions and responses have been filed, no one demonstrably has been harmed or prejudiced by the overlong briefing, and review should continue. That is the only argument that has even a ghost of merit, but it begs the question: What are the standards to be, if one party violates this court's rule, the other party fails to notice or raise it, and this court is left with the unacknowledged violation? To his credit, petitioner appears to recognize that simply ignoring the rule violation in such cases is no way to run a railroad (or an appellate court process), but he offers no help concerning what this court should do. That is not surprising, because the question of what this court is supposed to do is answered by the rule itself: We are supposed to limit our consideration of ballot title challenges to those that are made in a petition of ten pages or fewer.

And that is what we should have done here. Petitioner's arguments to us contain some interesting ideas, but no hint of an explanation as to why he did not at least consult the rules before preparing and filing his petition, and no good reason to depart from the clear words of our rule.

The majority allowed petitioner's motion, but it never explains why. As I hope the foregoing discussion demonstrates, the lack of an explanation by the majority is itself easily explained: No explanation is possible. Petitioner made no case at all for a waiver. And, having failed to do so, he also failed to take the other road that at least theoretically was open to him—he did not tender to this court an edited brief that complied with the rules.[3] Under such circumstances, a

---

[3] I say "theoretically," because a series of practical and analytical considerations would apply to any such tender. In the first place, it would involve the

decent respect for the purpose of the rule and its limitations should dictate the outcome here: Petitioner's petition should be stricken and the underlying proceeding to review the ballot title certified by the Attorney General for Initiative Petition 80 should be dismissed. I respectfully dissent from the majority's alternative choice that gave lip service to the rule, but then gave petitioner everything that he has asked for—even including a victory on the merits, thereby further delaying the circulation of petitions for this proposed initiative petition.[4]

Riggs and Balmer, JJ., join in this dissenting opinion.

---

profoundly untimely filing of the petition. If, however, it could be treated as a filing relating back to the original, timely (and overlong) petition (an issue as to which I take no position), there still would remain the problem of whether to let the Attorney General file a new response. Obviously, both processes would extend significantly the length of time involved in resolving an issue that long since should have been settled. Every delay would make it more difficult for the principal sponsors of the measure to gather the signatures that they needed to place the proposed measure on the ballot. Any jury-rigged process based on a late tender of a conforming brief would need to take such matters into consideration. Nonetheless, the approach has some appeal, and petitioner's failure to offer it as an alternative is surprising.

[4] Because I do not believe that we should be addressing them, I express no opinion respecting the merits of any of the arguments that petitioner advances.

APPENDIX
COPY OF INITIATIVE PETITION #80

Be it enacted by the people of the State of Oregon:

**Section 1.** Sections 2 to 6 of this act shall be known, and may be cited, as **The Home Owner and Family Farmer's Bill of Rights.**

**Section 2. No Exemptions that Reduce Property Values.** Government shall not waive a land use law to allow a use that would reduce the value of a neighboring home or harm a neighboring family farm. No use that would reduce the value of a neighboring home or harm a neighboring family farm shall be the basis of any demand for payment for complying with a land use law.

**Section 3. No Special Rights for Developers or Corporations.** Government shall not allow any corporation or developer to divide, build on or use land in violation of land use laws, whether by waiver or any other means, nor shall government pay a corporation or developer to comply with land use laws. A developer or corporation shall not pay or contract with another person to obtain government permits or approvals on behalf of or in cooperation with the developer or corporation to divide, build on or use land in violation of land use laws, whether by waiver or any other means.

**Section 4. Homestead Right.** A property owner may build a single family dwelling on the property owner's homestead tract if the property owner could have built a single family dwelling on the homestead tract under the land use laws in effect when the property owner acquired the homestead tract. A property owner is limited to one dwelling under this section and may not obtain relief under both this section and under Chapter 1, Oregon Laws 2005.

**Section 5. Burden of Proof on Government, Corporation, or Developer.** In any litigation brought by a home owner or family farmer to enforce this 2006 act, the defendant government entity, corporation or developer shall have the burden of demonstrating compliance with a law. If the home owner or family farmer prevails in the litigation, the court shall award the home owner or family farmer costs and

reasonable attorney fees, payable by the defendants, in addition to any other appropriate relief.

**Section 6.** **Definitions.** As used in this 2006 Act,

(1) "Corporation" means any business entity other than a sole proprietor or a family farm.

(2) "Developer" means a person or business entity engaged in developing real property.

(3) "Family farm" means a farm owned by the farm operator, by one or more family members of the farm operator, by an entity created by the farm operator or one or more family members of the farm operator, or by any combination of the foregoing.

(4) "Government" means a public body as defined in ORS 174.109.

(5) "Homestead tract" means a tract as defined in ORS 215.010 owned by a property owner, as that tract existed on January 1, 2005.

(6) "Land use law" means:

(a) A "comprehensive plan" or a "land use regulation" as defined in ORS 197.015;

(b) Administrative rules or goals of the Land Conservation and Development Commission or Oregon Department of Transportation;

(c) Metropolitan service district regional framework plans, functional plans, or planning goals and objectives; or

(d) Statutes or administrative rules regulating forest practices.

(7) "Waive" and "waiver" mean:

(a) To modify, remove, or not apply a land use regulation, or to allow property to be used notwithstanding a regulation, as provided in Chapter 1, Oregon Laws 2005; or

(b) To issue any land use approvals or permits pursuant to subsection (4)(a) of this section.

**Section 7.**   Sections 3 to 6 of this 2006 act are added to and made a part of ORS chapter 197.

**Section 8.**   This 2006 act supersedes any contrary law in force on or before the effective date of this act.

**Section 9.**   If a court of competent jurisdiction declares any part of this 2006 act invalid, the remaining parts shall continue to have full force and effect.